Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
20062 SW Birch Street, Ste. 200
Newport Beach, CA 92660
Office: (949) 200-8755
DisabilityRights@manninglawoffice.com

Attorney for Plaintiff: JAMES RUTHERFORD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON FUND V, LLC, a California limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | **Case No.** 5:19-cv-02324-JGB-SP<br><br>**First Amended Complaint For Damages And Injunctive Relief For:**<br><br>1. **VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12181** *et seq.* **as amended by the ADA Amendments Act of 2008 (P.L. 110-325).**<br><br>2. **VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51** *et seq*. |

Plaintiff, JAMES RUTHERFORD, an individual, ("Plaintiff"), complains of Defendants WASHINGTON FUND V, LLC, a California limited liability company; and Does 1-10 ("Defendants") and alleges as follows:

## PARTIES

1. Plaintiff is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting; in

addition to twisting, turning and grasping objects. As a result of these disabilities, Plaintiff relies upon mobility devices, including at times a wheelchair, to ambulate. With such disabilities, Plaintiff qualifies as a member of a protected class under the Americans with Disabilities Act, 42 U.S.C. §12102(2) as amended by the ADA Amendments Act of 2008 (P.L. 110-325) ("ADA") and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq. At the time of Plaintiff's visits to Defendants' facility and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the ADA, including those set forth in this paragraph. Plaintiff is also the holder of a Disabled Person Parking Placard.

2. Plaintiff is informed and believes and thereon alleges that Defendant WASHINGTON FUND V, LLC, a California limited liability company, owned the property located at 14173 Green Tree Blvd, Victorville, California 92395 ("Property") on or around October 10, 2019.

3. Plaintiff is informed and believes and thereon alleges that WASHINGTON FUND V, LLC, a California limited liability company, owns the Property currently.

4. Plaintiff does not know the true name of Defendants, its business capacity, its ownership connection to the Subject Property serving Green Tree Inn ("Business"), or its relative responsibilities in causing the access violations herein complained of. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant

1    to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the ADA.

2    6.      This court has supplemental jurisdiction over Plaintiff's non-federal
3    claims pursuant to 28 U.S.C. § 1367, because Plaintiff's Unruh Civil Rights Act,
4    California Civil Code § 51 *et seq.*, **("**UCRA") claims are so related to Plaintiff's
5    federal ADA claims in that they have the same nucleus of operative facts and
6    arising out of the same transactions, they form part of the same case or controversy
7    under Article III of the United States Constitution.

8    7.      Venue is proper in this court pursuant to 28 U.S.C. §1391 because the
9    real property which is the subject of this action is located in this district and because
10   Plaintiff's causes of action arose in this district.

## FACTUAL ALLEGATIONS

8.      Plaintiff went to the Business on or about October 10, 2019 for the dual purpose of booking a room and to confirm that this public place of accommodation is accessible to persons with disabilities within the meaning federal and state law.

9.      The Business is a facility open to the public, a place of public accommodation, and a business establishment.

10.     Parking spaces are one of the facilities, privileges, and advantages reserved by Defendants to persons at the Property serving the Business.

11.     Unfortunately, although parking spaces were one of the facilities reserved for patrons, there were no designated parking spaces available for persons with disabilities that complied with the 2010 Americans with Disabilities Act Accessibility Guidelines ("ADAAG") on October 10, 2019.

12.     At that time, instead of having architectural barrier free facilities for patrons with disabilities, Defendants have: there is no ADASAD compliant accessible or van accessible parking signage in violation of Section 502.6; floor and ground surfaces shall be stable, firm, and slip resistant per 302 (here, several portions of the pavement surface at the accessible parking spaces and access aisles

are cracked and pitted with one access aisle deteriorated to where ambulation is dangerous); the curb ramps project into the accessible parking space access aisles in violation of Section 406.5 which requires that curb ramps and the flared sides of curb ramps shall be located so that they do not project into vehicular traffic lanes, parking spaces, or parking access aisles; the slope of the curb ramp flares at the curb ramps connecting the accessible parking spaces to the accessible route exceed 10% in violation of Section 406.3 which requires that the slope does not exceed 10%; there are no accessible routes connecting the parking to the main entrance or elements within the facility as required by Section 206.2.2 which requires that at least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site, and 206.1 requiring access to the site arrival point (main entrance) from the public street; and, there is no accessible route provided within the site from accessible parking spaces and accessible passenger loading zones, public streets and sidewalks, and public transportation stops to the accessible building or facility entrance they serve as required per Section 206.2.1.

13. On April 11, 2020, a Certified Access Specialist ("CASp") inspected the Property and identified the following barriers at the Business and Property[1]: curb ramp at the West entrance to the lobby with a maximum slope as high as 39.8% at the left side flare and 35.2% at the right side flare exceeding the maximum of 8.3%. (Section 406.1; 405.2); South ramp at the West entrance to the lobby a running slope of walking surface measuring as high as 8.8% which exceeds the 2.0% maximum. (Section 403.3); Cross slope at the South ramp at the West entrance to the lobby measures as high as 8.7% exceeding the 2% maximum. (Section 403.3); the running

FIRST AMENDED COMPLAINT

slope at the North Ramp at the West entrance to the lobby measures as high as 8.7%. (Section 403.3); cross slope of the walking surface at the North ramp at the West entrance to the lobby measures as high as 3.5% which exceeds the 2.0% maximum (Section 403.3); the accessible route to the North entrance of the lobby contains a cross slope measuring between 2.3% - 3.4% at multiple locations throughout the walkway which exceeds the 2.0% maximum. (Section 403.3); interior service counter does not provide the required length for the parallel approach portion of the counter's surface of 36" minimum in length, 34" maximum AFF, and a clear floor space positioned for a parallel approach adjacent to 36" minimum length of counter. Section 305.3; 305.5); interior service counter's point of sale machine measures 51 1/2" which is outside the maximum 48" reach range. (Section 803.5; 308.2; 308.3); accessible parking at West side of hotel lobby/conference center contains excessive cracking, patches, and holes making the parking not firm and stable (Section 302.1; 502.4); the slope in the accessible aisle of the South accessible parking measures between 2.5% - 7.1% caused by uneven surface and exceeds the maximum slope measurement allowed of 2.08% (Section 502.4); South accessible parking space does not have the required identification sign at the head of the parking space. (Section 502.6); South accessible parking cross-hatched lines measure as much as 40" on center which exceeds the maximum of 36" on center in a color contrasting that of the aisle surface. (Section 502.3.3); the words " NO PARKING" have not been painted in 12" lettering to be visible for traffic enforcement officials at the South accessible parking. (Section 502.3.3); the South accessible parking space is less than 216" long and the access aisle does not extend the full required length of the parking spaces they serve. (Section 502.1; 502.2; 502.3.1); North accessible parking space slope in the accessible aisle measures as high as 2.06% caused by uneven surface which exceeds the maximum 2.08% allowed. (Section 502.4); ); North accessible parking space does not have the required identification sign at the head of the parking space. (Section 502.6); North accessible parking cross-hatched

lines measure between 37" - 41" on center which exceeds the maximum of 36" on center in a color contrasting that of the aisle surface. (Section 502.3.3); the words "NO PARKING" have not been painted in 12" lettering to be visible for traffic enforcement officials at the North accessible parking. (Section 502.3.3); the North accessible parking measures 209 ¾" in length is less than the required 216" long and an access aisle that measures 209 ¾" does not extend the full require length of the parking space it serves. (Section 502.1; 502.2; 502.3.1); the accessible parking adjacent to Room #103 contains a slope in the accessible space which measure between 2.4% - 16.3% caused by uneven surface and a 2" change in level caused by a built-up curb ramp into the parking space. (Section 502.4); accessible parking space adjacent to room #103 does not have the required identification sign at the head of the parking space. (Section 502.6); access aisle adjacent to room #103 does not adjoin an accessible route from either the front of the accessible aisle due to no curb ramp, or from the rear of the accessible aisle due to reduced clearance. (Section 502.3); there is no accessible aisle provided on either the passenger side, or the driver's side of the vehicle at the accessible parking adjacent to room #103. (Section 502.2); the slope in the assessible aisle adjacent to room #125 measures between 3.4% - 6.4% caused by uneven surface which exceed the 2.08% maximum allowed (Section 502.4); the accessible parking adjacent to room #125 contains asphalt that has excessive cracking, patches, and holes making the parking not firm and stable. (Section 302.1; 502.4); the accessible parking adjacent to room #125 measures 214" in length is less than the required 216" long and an access aisle that measures 215 ¼" does not extend the full require length of the parking space it serves. (Section 502.1; 502.2; 502.3.1); the accessible parking space adjacent to room #125 measure 97 ¼" wide which is less than the 108" minimum requirement (Section 502.1; 502.2; 502.3.1); the parking space identification sign at the accessible parking adjacent to room #125 has been installed at only 56" above the finished floor which is less than the required 60" minimum. (Section 502.6); the $250 fine signage is not provided

for the accessible parking adjacent to room #125. (Section 502.6.2); the curb ramp maximum slope measure as high as 19.5% at the accessible parking adjacent to room #125 which exceeds the maximum 8.3% allowed. (Section 406.1; 405.2; 406.3.1; 406.2.1); the lope at the left accessible parking adjacent to the three story building elevator measures between 2.3% - 5.4% caused by uneven surface which exceeds the maximum 2.08% allowed. (Section 502.4); parking space identification sign at the left accessible parking adjacent to the three story building elevator has been installed at only 51 ½" above the finished floor which is less than the 60" minimum requirement. (Section 502.6); the $250 fine signage is not provided for the accessible parking adjacent to the three story building elevator. (Section 502.6.2); there is no accessible aisle provided on either the passenger side, or the driver's side of the vehicle at the left accessible parking adjacent to the three story building elevator. (Section 502.2); the middle accessible parking space adjacent to the three story building elevator contains a slope that measures as high as 3.7% caused by an uneven surface which exceeds the 2.08% maximum allowed. (Section 502.4); the $250 fine signage is not provided for the middle accessible parking adjacent to three story building. (Section 502.6.2); parking space identification sign at the left accessible parking adjacent to the three story building elevator has been installed at only 51 ¾" above the finished floor which is less than the 60" minimum requirement. (Section 502.6); the right accessible parking space adjacent to the three story building elevator contains a slope that measures between 2.4% - 5.1% caused by an uneven surface which exceeds the 2.08% maximum allowed. (Section 502.4); the $250 fine signage is not provided for the right accessible parking adjacent to the three story building elevator. (Section 502.6.2); parking space identification sign at the right accessible parking adjacent to the three story building elevator has been installed at only 51 ¼" above the finished floor which is less than the 60" minimum requirement. (Section 502.6); there is no accessible aisle provided on either the passenger side, or the driver's side of the vehicle at the right accessible parking

adjacent to the three story building elevator. (Section 502.2); there is an inadequate amount of accessible spaces and van accessible spaces provided to the number of total spaces. (Section 208.2); cross slope at the Southwest corner of the conference center measure between 2.4% - 3.6% which exceeds the maximum 2.0% allowed. (Section 403.3); a running slope measures between 6.4% - 8.1% at the accessible route from the Southwest corner of the Hotel's lobby and extending to the Northeast corner of the two story building which exceeds the 5.0% maximum allowed. (Section 403.3);  slab joint along the accessible route at the North side of the two story building measures between ¾" – 1" wide and ½" deep which is greater than the maximum measurements of 1/" wide and/or 1/4" deep in direction of travel. (Section 303.1; 303.2; 303.3; 302.3); slab joint along the accessible route at the west side of the two story building extending from room 101 to 123 measures between ¾" – 1" wide and ½" – ¾" deep which is greater than the maximum measurements of 1/" wide and/or 1/4" deep in direction of travel. (Section 303.1; 303.2; 303.3; 302.3); cross slope along the accessible route of the west side of the two story building extending from room 101 to 123 measures between 2.5% - 3.0% which exceeds the maximum 2.0% allowed. (Section 403.3); fire extinguisher cabinet projects 6 ½" into the accessible route with the bottom leading edge at 40 ¾" above the finished floor along the accessible route of the west side of the two story building extending from room 101 to 123. (Section 204.1; 307.2; 307.3; 307.5); slab joint along the accessible route at the West side of the two story building extending from room 125 to room 147 measures between ¾" – 1" wide and ½" – ¾" deep which is greater than the maximum measurements of 1/" wide and/or 1/4" deep in direction of travel. (Section 303.1; 303.2; 303.3; 302.3); cross slope of the accessible route along the West side of the two story building extending from room 125 to room 147 measures between 2.3% - 3.8% which exceeds the maximum 2.0% allowed. (Section 403.3); fire extinguisher cabinet projects 6" into the accessible route with the bottom leading edge at 37 ¾" above the finished floor along the accessible route of the west side of

the two story building extending from room 125 to 147. (Section 204.1; 307.2; 307.3; 307.5); slab joint along the accessible route at the South side of the two story building measures between ¾" – 1" wide and ½" – ¾" deep which is greater than the maximum measurements of 1/" wide and/or 1/4" deep in direction of travel. (Section 303.1; 303.2; 303.3; 302.3); cross slope at the accessible route along the South side of the two story building measure as high as 2.6% which is higher than the maximum 2.0% allowed. (Section 403.3); slab joint along the accessible route at breezeway by the ice and soda machines measures between ¾" – 1" wide and ½" deep which is greater than the maximum measurements of 1/" wide and/or 1/4" deep in direction of travel. (Section 303.1; 303.2; 303.3; 302.3); stairway and HVAC ducting creates an inadequate vertical clearance at breezeway by the ice and soda machines. (Section 307.4); slab joint along the accessible route at breezeway by the housekeeping quarters measures between ¾" – 1" wide and ½" deep which is greater than the maximum measurements of 1/" wide and/or 1/4" deep in direction of travel. (Section 303.1; 303.2; 303.3; 302.3); stairway creates an inadequate vertical clearance at breezeway by the housekeeping quarters. (Section 307.4); accessible route along the East side of the two story building extending from room 100 to room 124 contains an abrupt change in level adjacent to room 100 which measure as high as 1 ½". (Section 403.4; 303.1; 303.2; 303.3); accessible route along the East side of the two story building extending from room 100 to room 124 contains an abrupt change in level adjacent to room 110 which measure as high as 5/8". (Section 403.4; 303.1; 303.2; 303.3); accessible route along the East side of the two story building extending from room 100 to room 124 contains an abrupt change in level adjacent to room 114 which measure as high as 5/8". (Section 403.4; 303.1; 303.2; 303.3); slab joint along the accessible route on the East side of the two story building extending from room 100 to room 124 which is greater than the maximum measurements of 1/" wide and/or 1/4" deep in direction of travel. (Section 303.1; 303.2; 303.3; 302.3); cross slop along the accessible route of the East side of the two story building

extending from room 100 to room 124 measure between 2.6% - 4.8% which is higher than the 2.0% maximum allowed. (Section 403.3); fire extinguisher cabinet at room 110 projects 6" into the accessible route. (Section 204.1; 307.2; 307.3; 307.5); accessible route along the East side of the two story building extending from room 124 to room 146 contains an abrupt change in level adjacent to room 146 which measure as high as 3/4". (Section 403.4; 303.1; 303.2; 303.3); water meter cover has a broken corner creating an excessive gap measuring 2" wide along the accessible route of the East side of the two story building from room 124 to room 146. (Section 303.1; 303.2; 303.3; 302.3); fire extinguisher cabinet along the accessible route of the East side two story building extending from room 124 to room 146 projects 6" into the accessible route. (Section 204.1; 307.2; 307.3; 307.5); running slope on the accessible route form the Northeast corner of the two story building to the swimming pool measures as high as 10.9% which is steeper than the 5.0% maximum allowed. (Section 403.3); cross slope measures between 3.7% - 4.5% along the accessible route from the Northeast corner of the two story building to the swimming pool which is steeper than the 2.0% maximum allowed. (Section 403.3); swimming pool door hardware has round door knobs which requires a tight grasp and twist of wrist. (Section 309.4); push side of swimming pool entrance door does not have a smooth, uninterrupted surface or panel on bottom 10" of push side of door that extends the full width of the door (Section 404.2.10); running slope on the accessible route form the Southwest corner of room 147 to the three story building measures between 605% - 6.6% which is steeper than the 5.0% maximum allowed. (Section 403.3); accessible route along the West side of the three story building contains an abrupt change in level adjacent to room 175 which measure as high as 1 ¼". (Section 403.4; 303.1; 303.2; 303.3); fire extinguisher cabinet at room 189 projects 6" into the accessible route along the west side of the three story building accessible route. (Section 204.1; 307.2; 307.3; 307.5); fire extinguisher cabinet at room 185 projects 6" into the accessible route along the west side of the three story

10
FIRST AMENDED COMPLAINT

building accessible route. (Section 204.1; 307.2; 307.3; 307.5); fire extinguisher cabinet at room 189 projects 6" into the accessible route along the west side of the three story building accessible route. (Section 204.1; 307.2; 307.3; 307.5); fire extinguisher cabinet at room 181 projects 6" into the accessible route along the west side of the three story building accessible route. (Section 204.1; 307.2; 307.3; 307.5); fire extinguisher cabinet at room 176 projects 6" into the accessible route along the west side of the three story building accessible route. (Section 204.1; 307.2; 307.3; 307.5).

14. Plaintiff is informed and believes and thereon alleges Defendants had no policy or plan in place to make sure that there was compliant accessible parking reserved for persons with disabilities prior to October 10, 2019.

15. Plaintiff is informed and believes and thereon alleges Defendants have no policy or plan in place to make sure that the designated disabled parking for persons with disabilities comport with the ADAAG.

16. Plaintiff personally encountered these barriers. The presence of these barriers related to Plaintiff's disability denies Plaintiff his right to enjoy accessible conditions at public place of accommodation and invades legally cognizable interests created under the ADA.

17. The conditions identified *supra* in paragraph 12 and 13 are necessarily related to Plaintiff's legally recognized disability in that Plaintiff is substantially limited in the major life activities of walking, standing, ambulating, sitting, in addition to twisting, turning and grasping objects; Plaintiff is the holder of a disabled parking placard; and because the enumerated conditions relate to the use of the accessible parking and the accessible route, and relate to the slope and condition of the accessible parking and accessible route to the accessible entrance.

18. The *Chapman v. Pier 1 Imports* court held that "the ADAAG establishes the technical standards required for 'full and equal enjoyment'" and that "if a barrier violating these standards relates to a plaintiff's disability, it will impair

the plaintiff's full and equal access" and "constitutes 'discrimination' under the ADA." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011). The violations of the ADAAG at the Property relate to persons with mobility disabilities, including Plaintiff, impairs Plaintiff's full and equal access, and constitutes discrimination under the ADA.

19. As an individual with a mobility disability who at times relies upon a wheelchair or other mobility devices, Plaintiff has a keen interest in whether public accommodations have architectural barriers that impede full accessibility to those accommodations by individuals with mobility impairments.

20. Plaintiff is being deterred from patronizing the Business and its accommodations on particular occasions, but intends to return to the Business for the dual purpose of availing himself of the goods and services offered to the public and to ensure that the Business ceases evading its responsibilities under federal and state law.

21. Upon being informed that the public place of accommodation has become fully and equally accessible, he will return within 45 days as a "tester" for the purpose of confirming their accessibility. *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1096 (9th Cir. 2017).

22. As a result of his difficulty experienced because of the inaccessible condition of the facilities of the Business, Plaintiff was denied full and equal access to the Business and Property.

23. The Defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

24. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative

accommodations that could be made to provide a greater level of access if complete removal were not achievable.

25. Given the obvious and blatant violation alleged hereinabove, Plaintiff alleges, on information and belief, that there are other violations and barriers in the site that relate to his disability. The Defendants are on notice that the Plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, the plaintiff can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

26. Without injunctive relief, Plaintiff will continue to be unable to fully access Defendants' facilities in violation of Plaintiff's rights under the ADA.

## **FIRST CAUSE OF ACTION**
## **VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181 *et seq*. as amended by the ADA Amendments Act of 2008 (P.L. 110-325)**

27. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this First Amended Complaint necessary or helpful to state this cause of action as though fully set forth herein.

28. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods, and services of any place of public accommodation are offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a.    A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those

      services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

  b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D".

  c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

29. Any business that provides parking spaces must provide accessible parking spaces. 2010 Standards § 208. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards § 502.4. "Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Here the failure to provide a level access aisle in the designated disabled parking space is a violation of the law and excess slope angle in the access pathway is a violation of the law.

30. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

31. Here, the failure to ensure that accessible facilities were available and ready to be used by Plaintiff is a violation of law.

32. Given its location and options, Plaintiff will continue to desire to patronize the Business but he has been and will continue to be discriminated against

14
FIRST AMENDED COMPLAINT

due to lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE UCRA, CALIFORNIA CIVIL CODE § 51 *et seq.*

33. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above and each and every other paragraph in this First Amended Complaint necessary or helpful to state this cause of action as though fully set forth herein.

34. California Civil Code § 51 *et seq*. guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendants are systematically violating the UCRA, Civil Code § 51 *et seq*.

35. Because Defendants violate Plaintiff's rights under the ADA, Defendants also violated the UCRA and are liable for damages. (Civ. Code § 51(f), 52(a).) These violations are ongoing.

36. Plaintiff is informed and believes and thereon alleges that Defendants' actions constitute discrimination against Plaintiff on the basis of a disability, in violation of the UCRA, Civil Code § 51 *et seq*., because Defendants have been previously put on actual or constructive notice that the Business is inaccessible to Plaintiff. Despite this knowledge, Defendants maintain its premises in an inaccessible form, and Defendants have failed to take actions to correct these barriers.

## PRAYER

**WHEREFORE, Plaintiff prays that this court award damages provide relief as follows:**

1. A preliminary and permanent injunction enjoining Defendants from further violations of the ADA, 42 U.S.C. § 12181 *et seq.* as amended by the ADA Amendments Act of 2008 (P.L. 110-325), and UCRA, Civil Code § 51 *et seq.* with respect to its operation of the Business and Property; Note: Plaintiff is not invoking

15
FIRST AMENDED COMPLAINT

section 55, *et seq*, of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act (Cal. C.C. §54) at all.

2. An award of actual damages and statutory damages of not less than $4,000 per violation pursuant to § 52(a) of the California Civil Code;

3. An additional award of $4,000.00 as deterrence damages for each violation pursuant to *Johnson v. Guedoir,* 218 F. Supp. 3d 1096; 2016 U.S. Dist. LEXIS 150740 (USDC Cal, E.D. 2016);

4. For reasonable attorneys' fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205; California Civil Code § 52.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this First Amended Complaint.

Dated: June 30, 2020  **MANNING LAW, APC**

By: /s/ Joseph R. Manning Jr., Esq.
  Joseph R. Manning Jr., Esq.
  Attorney for Plaintiff